E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BRITTNEY M. HARRIS (Cal. Bar No. 294650)
Assistant United States Attorney
International Narcotics, Money Laundering,
and Racketeering Section
  1200 United States Courthouse
  312 North Spring Street
  Los Angeles, California 90012
  Telephone: (213) 894-0488
  Facsimile: (213) 894-0141
  E-mail: Brittney.Harris@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-00174-SB |
|---|---|
| Plaintiff, | **GOVERNMENT'S MOTION TO STRIKE AND SENTENCING POSITION** |
| v. | |
| ERIC SCHMIDT, | Hearing Date: 2/28/23<br>Hearing Time: 8:00 a.m.<br>Location: Courtroom of the Hon.<br>  Stanley Blumenfeld, Jr |
| Defendant. | |

  Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Brittney M. Harris, hereby files its motion to strike and sentencing position for defendant Eric Schmidt.

///
///
///
///
///
///
///

This motion and sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 13, 2023            Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

   /s/ Brittney M. Harris
BRITTNEY M. HARRIS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant packaged and mailed a one-kilogram vacuum-sealed brick of compressed powdered fentanyl through the United States postal system with the intent that it be distributed to customers in New York. For his conduct, defendant was charged by indictment with one count of possession with intent to distribute fentanyl, with a ten-year mandatory-minimum penalty enhancement, as set forth in 21 U.S.C. § 841(b)(1)(A)(vi), because the amount of fentanyl involved was over 400 grams. Defendant proceeded to trial in November 2022 and was convicted.

In December 2022, the United States Attorney General issued two memoranda setting forth prosecution policies for certain cases, including drug cases involving mandatory-minimum penalties. Together, the memoranda advise prosecutors to evaluate in pending cases whether mandatory-minimum penalties are appropriate considering four factors enumerated in the policies. As required by the memoranda, the government has evaluated the instant case and has determined that defendant's conduct meets the enumerated factors, and therefore, hereby moves to strike the mandatory-minimum penalty provision in the indictment, pursuant to Federal Rule of Criminal Procedure 48(a). The government requests that the Court grant the government's motion and proceed to sentencing defendant under 21 U.S.C. § 841(a)(1), (b)(1)(C), which is the non-mandatory minimum penalty provision for Schedule I and II substances . Defendant concurs with the government's motion and request.

With respect to the Guidelines calculation, the government agrees with the USPO's determination that the base offense level is 30, which corresponds to the drug quantity range that includes the 1,008 kilograms of fentanyl that defendant possessed. The government further concurs with USPO that defendant is not eligible for safety valve relief because he has not fulfilled the criterion requiring him to provide all truthful information that he has on his crimes to the government, and that he is not eligible for an

acceptance of responsibility reduction because he proceeded to trial. However, the government believes that defendant's conduct warrants a two-level minor role reduction under U.S.S.G. § 3B1.2(b) because defendant's role in the crime was limited, he did not exercise decision-making authority within the organization, and his benefits were minimal. With that reduction, the government believes that the appropriate Guidelines range is 87-108 months' imprisonment. The government recommends a sentence of 87 months' imprisonment, followed by a three-year term of supervised release, and a $100 special assessment.

## II.  STATEMENT OF FACTS

On or about August 24, 2021, defendant shipped a fentanyl-filled parcel at the United States Post Office in Apple Valley, intending for it to be delivered to someone in New York. The parcel was intricately and purposefully wrapped in multiple layers, all of which were intended to hide the drugs inside and evade law enforcement detection. Specifically, inside of the parcel was a medium USPS Priority Mail box with an address label bearing the same recipient address as the outside of the parcel and was closed with tape that contained seven fingerprints belonging to defendant. Inside of the medium box was a blue and white bubble mailer, which was closed with clear tape that contained three fingerprints belonging to defendant, and again was addressed to the same recipient. Inside of the bubble mailer was a foil wrapped brick-shaped item, and an old metal tool used to thwart x-ray detection and law enforcement's investigation into the parcel. Inside of the foiled item was a vacuum-sealed bag that contained five of defendant's fingerprints. Inside of the bag was a brick that was wrapped with several layers of packaging, including plastic wrap, dryer sheets, and coffee grounds, all of which were intended to thwart canine detection of the drugs contained inside. Beneath all of the packaging was 1,008.2 grams of compressed powdered fentanyl, which the government's expert testified was enough for approximately 200,000 doses of fentanyl.

On June 20, 2022, agents executed search warrants at defendant's residence and found two boxes of plastic vacuum bags in the garage. The same day, agents also conducted a Mirandized interview of defendant. Defendant admitted that he packaged the parcel in his garage and shipped it from the Apple Valley Post Office. Defendant further admitted that at the time he mailed it, he believed it was methamphetamine, and later found out from the person who supplied it that it was, in fact, fentanyl. Defendant also admitted that he owned a heat sealing device.

At trial, defendant testified that he mailed the parcel and that he handwrote the recipient address on the three layers (the outer box, inner medium box, and blue bubble mailer).[1] Defendant further testified that he was paid $100 to mail the drug parcel. Contrry to defendant's admission to law enforcement in June 2022, however, defendant testified at trial that he did not know the parcel contained drugs at all and that he never told law enforcement that he believed it contained methamphetamine.

### III.   GOVERNMENT'S MOTION UNDER RULE 48(a)

Pursuant to new Department of Justice ("DOJ") policies and Federal Rule of Criminal Procedure 48(a), the government seeks leave of Court to dismiss the increased penalty provision against defendant, pursuant to 21 U.S.C. § 841(b)(1)(A), as set forth in the indictment.

On December 16, 2022, the United States Attorney General issued two memoranda setting forth new DOJ charging and prosecution policies.[2] The first, entitled General Department Policies Regarding Charging, Pleas, and Sentencing (the "General Policies Memorandum"), sets forth new charging policies with respect to mandatory-minimum offenses and further directs prosecutors to a more specific policy on drug

---

[1] The government's expert testified at trial that drug traffickers often include the recipient information on the inner layers in case the parcel is inadvertently opened during the transportation process.

[2] The General Policies Memorandum can be found at https://www.justice.gov/media/1265326/dl?inline. The Drug Cases Policy Memorandum can be found at https://www.justice.gov/media/1265321/dl?inline.

cases, which was issued the same day. The second memorandum, entitled Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases, sets forth new DOJ policies for drug cases, which includes four factors that prosecutors must consider before proceeding with mandatory-minimum penalties against a defendant. The General Policies Memorandum advises prosecutors, in cases wherein final judgement has not yet been imposed, to "take steps to render the charging document, plea agreement, and the sentence consistent with these policies – to the extent possible and as the prosecutors in their discretion deem appropriate in light of the federal interests involved."

Based on the DOJ's new policies, the government reviewed the instant prosecution and has determined that defendant does not meet the DOJ's new criteria for proceeding with a mandatory-minimum penalty against defendant and because final judgment has not yet been imposed, the government must "take steps" to remove such penalties against defendant.

The government believes that this remedy can be accomplished through a motion pursuant to Federal Rule of Criminal Procedure 48(a). Rule 48(a) allows the government to move the Court to dismiss an indictment, information, or complaint, and if made during or after trial, the government must do so with the defendant's consent. The Ninth Circuit, like most if not all circuits, recognizes that the traditional role of prosecutorial decisions rests with the executive branch and that district courts should grant Rule 48 motions by the government so long as they are made in good faith. See, e.g., United States v. Hayden, 860 F.2d 1483, 1487 (9th Cir. 1988) ("While the judiciary has been authorized to supervise prosecutorial decisions to dismiss, Rule 48(a) was not enacted for the purpose of usurping the traditional role of the prosecutor to determine whether to terminate a pending prosecution" and in assessing propriety of a prosecutor's Rule 48 motion, the court should consider whether the motion is made in good faith); see also United States v. Cowan, 524 F.2d 504, 513 (5th Cir. 1975) ("The Executive remains

the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated.") The Supreme Court has recognized Rule 48 motions by the government even when they are made pursuant to DOJ policies and even when such motions are made after trial. See generally, Rinaldi v. United States, 434 U.S. 22, 30-31 (1977) (finding that the government's Rule 48 motion, which was made pursuant to the DOJ's Petit policy, was in the public's interest and should have been granted despite the motion being made post-conviction).

In the instant case, the government seeks leave of Court to dismiss the mandatory-minimum penalty provision, pursuant to 21 U.S.C. § 841(b)(1)(A), as set forth in the indictment against defendant, in light of the DOJ's new charging policies, which were pronounced after defendant's conviction, but before sentencing. While Rule 48(a) does not expressly permit the government to strike only part of a count; the government believes that because Rule 48 permits the government to move the Court to dismiss an entire count, it follows that Rule 48 could encompass dismissal of an increased penalty provision contained within a count, and case law generally recognizes that prosecutorial decisions rest with the executive branch. The government's motion is sought in good faith because it is made pursuant to new DOJ policies that were pronounced after defendant's conviction. Further, the motion is in the public's interest because the Attorney General's purpose for the new policies, in part and as explained in the memoranda, is out of a recognition that mandatory minimum sentences have resulted in disproportionately severe sentences for certain defendants. Finally, the motion is in defendant's interest because it would remove the ten-year mandatory-minimum penalty that would otherwise apply to his case. Defendant concurs with the government's Rule 48(a) motion seeking to strike the penalty provision in the indictment and the parties request that the Court grant the government's motion and proceed to sentencing pursuant to the non-mandatory minimum custodial penalties set forth in 21 U.S.C. § 841(b)(1)(C).

## IV. GUIDELINES CALCULATION AND STATUTORY PENALTIES

The USPO determined, and the government agrees that defendant's base offense level is 30, pursuant to U.S.S.G. § 2D1.1(a)(5), (c)(5), which reflects fentanyl quantities between 400 grams and 1.2 kilograms. The USPO further determined, and the government agrees, that defendant is not eligible for safety valve relief because he has not fulfilled the criterion requiring him to provide all truthful information that he has on his crimes to the government, and that he is not eligible for an acceptance of responsibility reduction because he proceeded to trial. The USPO concluded that with a criminal history category of II, defendant's guidelines range is 120-135 months' imprisonment. As an aside, the actual Guidelines range for an offense level of 30 and criminal history category of II is 108-135 months' imprisonment. However, the government believes that the USPO increased the low-end of the range (from 108 to 120 months) to reflect the ten-year mandatory-minimum penalty charged in the indictment.

The government does not agree with the USPO's final calculation for two reasons. First, as explained above, the government is moving the Court to strike the increased penalty provision charged in the indictment. Thus, if granted, there would not be an mandatory-minimum custodial penalty under 21 U.S.C. § 841(a)(1), (b)(1)(C), and therefore, the Guidelines range would not need to be modified to account for any statutory mandatory minimum term of imprisonment. Second, the government believes that a two-level reduction for minor role is appropriate in this case because defendant's conduct meets all of the factors set forth in U.S.S.G. § 3B1.2(b). Specifically, defendant's involvement in the drug trafficking organization was limited to packaging and shipping one kilogram of powdered fentanyl. While the elaborate nature of defendant's packaging, the inclusion of a metal tool in the parcel, and the layered recipient address information strongly suggests that defendant has packaged drug parcels before (because such features would not be known by a lay person who had no prior involvement in trafficking drugs through the mail), defendant's conduct is not so vast

that it can be said that he had a supervisory role or exercised decision making authority in the drug trafficking organization. Even if defendant had packaged drug parcels before (which the government strongly believes is the case based on the packaging, and that he owned a heat sealing device and had two boxes of vacuum sealed bags in his garage), defendant's role in the organization was likely limited to packing and shipping drug parcels and that he was likely not privy to the inner workings or had knowledge of the structure of the drug trafficking organization, beyond information about the person(s) who gave him the drugs for shipment. Defendant's benefits were monetary compensation, which, according to him, was $100 for mailing the parcel. With a two-level minor role reduction, the government believes defendant's offense level is 28, with corresponds to a Guidelines range of 87-108 months' imprisonment.

Finally, pursuant to 21 U.S.C. § 841(b)(1)(C), there are no statutory mandatory minimum terms of imprisonment; however, there is a mandatory minimum term of three years of supervised release.

## V. ARGUMENT

The government believes that a low-end Guidelines sentence of 87 months' imprisonment followed by a three-year period of supervised release, and a $100 special assessment is a sufficient, but not greater than necessary sentence in this case.

Considering the nature and circumstances of the offense, there is no question that defendant's criminal conduct in sending approximately 200,000 doses of deadly fentanyl through the mail system is very serious. Moreover, defendant's conduct strongly suggests that he has mailed drug parcels in the past. The elaborate nature in which he packaged the parcel included multiple features in order to thwart law enforcement detection of the drugs contained inside and included some features that would not be known by a novice who had never packaged drug parcels before (such as including a metal tool to thwart x-ray detection). Overall, defendant's conduct is serious and his sentence should account for that. Defendant's limited role in the overall drug trafficking

organization is factored in through the two-level minor role reduction and in the government's low-end recommendation. Thus, given the serious nature of the offense and that the government's recommendation already accounts for defendant's limited involvement, 87 months is appropriate.

Defendant's history and characteristics are not particularly mitigating. Defendant has a long criminal history of drug related offenses from 1996 onwards. Defendant also has completed high school, has vocational skills, and military experience, yet he has chosen a path of drug trafficking. In addition, the government anticipates that defendant will ask for a reduced sentenced because he is purportedly the caregiver for his father who – according to the PSR – is bedridden and relies on defendant for all activities, including bathing, going to the restroom, etc. This is not mitigating because defendant voluntarily engaged in drug trafficking even while knowing that he was the caretaker for his father. That fact should not know be used to support a reduced sentence.

On balance, the government believes that a sentence of 87 months' imprisonment followed by a three-year term of supervised release is a sufficient, but not greater than necessary sentence.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion to strike the increased penalty provision pursuant to 21 U.S.C. § 841(b)(1)(A) in the Indictment and proceed with sentencing defendant under 21 U.S.C. § 841(b)(1)(C). The government also respectfully requests that this Court impose the following sentence: 87 months' imprisonment followed by a three-year period of supervised release, and a $100 special assessment.